IN THE MATTER OF THE GUARDIANSHIP OF MARY LOUISE DE MARCELLIN, AN INFANT UNDER THE AGE OF FOURTEEN YEARS.

24h   207<br>a 40 Mis 578

*Guardian — when the wishes of the father, as to the person to be appointed, control.*

One Marcellin died, leaving him surviving a daughter, about nine years old, a second wife and a paternal uncle and aunt. A day or two before his death, he handed to his wife a paper, upon which he had written "Keep the children. Be a good Catholic, live a good Catholic and die a good Catholic, and pray, pray for me when I am dead." Neither the father, the daughter, nor the stepmother had any property. The aunt had some property and desired to be appointed guardian of the child.

*Held,* that the surrogate rightly appointed the stepmother its guardian.

APPEAL from an order made by the surrogate of Kings county, denying a petition for the revocation of an order appointing a guardian and modifying the said order as to the security required of the guardian.

On the 5th day of May, 1880, the surrogate of Kings county made an order appointing Annie T. de Marcellin guardian of the infant Mary Louise, nine years of age, upon condition, however, "that she should give a bond with two sureties, which bond shall be in the penal sum of $1,000, and which, in addition to the usual conditions, shall be further conditioned that the said guardian shall and will well and suitably support, maintain and educate said infant." This order was made after and upon petition by said Annie T. de Marcellin for such guardianship, and also after petition by Louisa de Marcellin· for the same, both petitions being heard and proofs thereupon being taken at the same time.

Annie T. de Marcellin, the guardian so appointed, was the widow of Thomas A. de Marcellin, father of the infant, but she was not of kin to the infant. She did not comply with the order appointing her, in that she gave no bond of any kind.

That fact existing for three months and more, the appellant here, Louisa de Marcellin, the aunt (sister of the father) of the infant, on the 10th day of August, 1880, presented to the same surrogate another petition reciting the facts and asking again for her appointment, and upon or during the hearing Annie T. de Marcellin presented another petition asking to be released from that part of the said order appointing her guardian which required her to give security to "support, maintain and educate said infant."

This petition was granted and the appellant's petition was again denied, and on the 12th day of November, 1880, the order appealed from was made.

*A. J. Perry*, for the appellant, for Louisa de Marcellin, aunt of infant.

*William D. Veeder*, for the respondent, Annie T. de Marcellin, stepmother of infant.

DYKMAN, J.:

Mary Louisa de Marcellin is an orphan child, about nine years of age. Her only relatives, so far as we know, are a paternal uncle and aunt. At the time of the death of her father in January, 1880, he was living with his second wife, and this child resided with him. A day or two before his death and when he was beyond recovery, he wrote these words on a piece of paper and handed it to his wife: "Keep the children. Be a good Catholic, live a good Catholic and die a good Catholic, and pray, pray for me when I am dead."

Thereupon, after the death of her husband, the stepmother applied to the surrogate of Kings county to be appointed the general guardian of the child. The father left no property, and neither the stepmother nor the child have any. The application was opposed by the aunt of the child who has some property, and who desired herself to be appointed the guardian of the child. The surrogate appointed the stepmother, and from that order this appeal is taken.

It is plain, therefore, that this controversy has reference alone to the custody of this child. She has no property, and there is no allegation against the fitness of either of these applicants for such custody, except that the stepmother has no property.

It is quite true that in the ordinary view it seems more desirable that the child should reside with the aunt and enjoy the comforts of a home in her family, but this consideration cannot overcome the dying wishes of her father. His declared will in relation to the custody and religious education of his child should be followed under the circumstances of this particular case. (*Underhill* v. *Dennis*, 9 Paige, 208.) He had the power to dispose of the custody of this child if he had exercised it in a legal manner, and we think his wishes, expressed as they were, should now control and be carried out, and that the surrogate exercised his discretion well.

The order must be affirmed, with costs and disbursements.

BARNARD, P. J., concurred; GILBERT, J., if guardian a fit person.

Order affirmed, with costs and disbursement.